# UNITED STATES DISTRICT COURT
for the

Eastern District of California

**FILED**

Apr 15, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

United States of America )
v. )
Elias Silva )      Case No.
)
)      **SEALED**
)      2:22-mj-0057 DB
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____February 3, 2020_____ in the county of _____Sacramento_____ in the _____Eastern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of at least 500 grams of a mixture and substance containing methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Keith Lipp

☑ Continued on the attached sheet.

/s/ Keith Lipp

*Complainant's signature*

Keith Lipp, FBI Special Agent

*Printed name and title*

Sworn to and signed before me telephonically.

Date: _____April 15, 2022_____

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

City and state: _____Sacramento, California_____

## AFFIDAVIT OF FBI SPECIAL AGENT KEITH LIPP

I, Federal Bureau of Investigation Special Agent Keith Lipp, being duly sworn, hereby depose and state:

## CRIMINAL COMPLAINT FOR ARREST WARRANT

1. This Affidavit is submitted in support of an arrest warrant and a criminal complaint charging **Elias Silva** (hereinafter **Silva**) with:

   COUNT ONE:  Distribution of at least 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).



2. **Silva's** adult criminal history includes convictions for:

   - 2005 - Felony Possession of Controlled Substance for sale, in violation of California Health and Safety Code § 11378.

   - 2007 - Felony Assault with a Deadly Weapon, in violation of California Penal Code § 245(A)(1).

## BACKGROUND AND EXPERTISE

3.  I am a special agent with the FBI. I entered on duty at the FBI Academy in Quantico, Virginia on March 1, 2020. I am currently assigned to the FBI's Sacramento Division, Violent Crime Safe Streets Task Force. I have been assigned to this squad since 2020.

4.  During the course of my employment as an FBI Special Agent, I have participated in criminal and national security investigations. I have also participated in investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, the seizure of narcotics-related records, and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances and weapons.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including informants and cooperating sources), stationary video recording vehicles, audio, and audio/video recording devices.

5.  I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

6.  Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested complaint, search and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

7.  This affidavit is based upon my own personal knowledge and upon the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is described in sum, substance, and relevant part.

SUMMARY OF PROBABLE CAUSE

8. Since September 2019, the Sacramento FBI Safe Streets Task Force had been targeting a drug trafficking organization coordinated by Elias Silva. During the course of the investigation, the FBI identified Silva as distributing methamphetamine. On February 3, 2021, Silva conducted a sale of 1008.9 grams of methamphetamine to the FBI. California Department of Motor Vehicle (DMV) records and surveillance conducted by the FBI personnel identified SILVA as the subject who sold the FBI methamphetamine.

STATEMENT OF PROBABLE CAUSE

9. In 2019, the FBI received information from an FBI Confidential Human Source (CHS) that Silva was engaged in distributing methamphetamine around Sacramento, California.

10. On February 3, 2020, the FBI conducted a controlled purchase of methamphetamine from Silva. Silva sold an FBI CHS 1008.9 grams of suspected methamphetamine.

### On February 3, 2020, Silva sells 1008.9 grams of methamphetamine.

11. In February 2020, suspected Varrio Franklon Norteño (VFN), Sacramento Regiment Commander for the Nuestra Familia (NF), Elias Silva, offered to sell FBI Confidential Human Source, hereinafter CHS-1[1], methamphetamine. Silva offered to sell CHS-1 one kilogram of methamphetamine for $2650.00 per kilogram.

    a. VFB stands for Varrio Franklin Blvd, a criminal street gang that originated in Sacramento's Oak Park community. La Nuestra Familia ("NF") originated in 1965, within the California Department of

---

[1] In February 2020, CHS-1 was an FBI Confidential Human Source (CHS). CHS-1 began providing information in 2019. CHS-1's criminal history includes: terroristic threats stemming from a domestic violence incident, vandalism, possession of controlled substance, possession/cultivating marijuana, and for felon in possession of weapon. CHS-1 has no convictions relating to fraud, false statements or perjury. CHS-1's motivations included a change of lifestyle and financial compensation. CHS-1 is no longer an FBI CHS. CHS-1 was closed as an FBI source on March 16, 2021, after he/she violated the terms of California state parole and an arrest warrant was issued.

Corrections and Rehabilitation. Being a member of the NF represents ascending to the uppermost echelon and leadership of the criminal street gang. The NF is a kind of "super-structure" that exists over, and governs, dozens of Hispanic street gangs operating in Northern California, including VFB. Membership is structured around three categories. CAT III, the highest rank, includes the three-general "High Command" and a small set of highly powerful members. CAT II customarily comprises "Regiment Commanders," who control activity in various areas of the state, and CAT I comprises newer members responsible for day-to-day operations in given areas.

12. CHS-1 arranged the transaction with Silva via the "Wickr Me," a private messaging application with end-to-end encryption. Silva utilized phone number 801-634-2304 to communicate with CHS-1. Silva's username on the "Wickr Me" application was "sammytriste36." CHS-1 reached out to Silva about the narcotics transaction and Silva responded by calling CHS-1 from telephone number 801-634-2304 and agreed to meet at the "Jimboy's Taco" located at 535 Wisconsin Avenue, Sacramento, California, hereinafter the Buy Location.

    a. According to telephone provider records, the account associated with phone number 801-634-2304 is registered to Silvia Villar, 3161 S. Timeron Drive, West Valley City, Utah.

13. On February 3, 2020, the FBI conducted a controlled purchase from Silva. At approximately 7:20 p.m., CHS-1's person was searched for weapons and/or contraband with negative results. CHS-1 was provided with $2800 in recorded buy funds, audio and video recording devices, and an audio transmitter. At approximately 8:15 p.m., CHS-1 departed the staging area and walked directly to the Jimboy's Taco while under FBI surveillance.

14. At approximately 8:23 p.m., Silva arrived at the Jimboy's Taco as the driver and sole occupant of a Nissan Maxima bearing California license plate 8LST640. CHS-1 walked up to the vehicle and sat in the passenger seat. After greeting one another, Silva gave a bag that was on his lap to CHS-1. That bag was subsequently found to contain approximately one kilogram of Nartec positive methamphetamine. CHS-1 began counting out the recorded buy funds and asked Silva how much he wanted for the kilogram. Silva replied $2650. CHS-1 counted out $2660 and handed it to Silva.

    a.  The Nissan Maxima is registered to EAN Holdings (dba Enterprise Rental).

    b.  Below is a screenshot of Silva captured by an undercover recording device on February 3, 2020, and a photograph of the methamphetamine weight.



15. Silva asked CHS-1 if he/she was interested in "black" (commonly used slang term for heroin). Silva explained to CHS-1 that he can get "black" for "18 a kick" ($18,000 for a kilogram). Silva explained that the black was "fire" and that it had to be cut with fentanyl. At approximately 8:34 p.m., CHS-1 exited Silva's vehicle and Silva left the Jimboy's Taco parking lot.

16. At approximately 8:36 p.m., CHS-1 departed the buy location and walked back to the staging area while under FBI surveillance.  CHS-1 arrived at the staging area where the suspected methamphetamine, audio/video recording equipment, and transmitter were recovered.  At approximately 8:40 p.m., CHS-1's person was searched for weapons and/or contraband with negative results.  CHS-1 confirmed he/she exchanged $2,660 to Silva for one kilogram of methamphetamine. CHS-1 verified Silva's identity by reviewing images of Silva.

17. Immediately following the operation, the methamphetamine was transported to the FBI Sacramento Field Office. The suspected methamphetamine was

"Nartec" field tested and produced presumptive positive results for methamphetamine.

## REQUEST TO SEAL

18. I request that the Court order that all papers in support of this application, including this affidavit and arrest warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may jeopardize that investigation.  Specifically, law enforcement anticipates executing the arrest warrant for this investigation in the next week.  Public disclosure of this investigation would likely cause the individual identified in this affidavit to destroy evidence, change his patterns of behavior, and flee from law enforcement.

## CONCLUSION

19. Based on the above information, I believe that there is probable cause to believe that **Silva** possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), I hereby request that this court issue an arrest warrant for **Silva.**

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_/s/ Keith Lipp_____
KEITH LIPP
FBI Special Agent

Sworn and Subscribed to me telephonically
on April _15_, 2022,

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

_____
JUSTIN LEE
Assistant United States Attorney

## PENALTY SLIP

## United States v. Elias Silva

**COUNT ONE:**   21 U.S.C. § 841(a)(1) – Distribution of at least 500 grams of a
mixture and substance containing methamphetamine

Imprisonment of at least 10 years and up to life; and
Fine of up to $10,000,000
Term of Supervised Release of at least 5 years and up to life
Mandatory $100 Special Assessment